UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
CASE NO:

AIDS HEALTHCARE FOUNDATION, INC.

    Plaintiff,

VS.

OKALOOSA AIDS SUPPORT AND
INFORMATIONAL SERVICES, INC.,
a/k/a "OASIS," and the FLORIDA
DEPARTMENT OF HEALTH,

    Defendants.
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff AIDS Healthcare Foundation, Inc. ("AHF") hereby brings this action against Defendant Okaloosa AIDS Support and Informational Services, Inc. ("OASIS") and the Florida Department of Health (the "DOH").

1. This is a complaint for declaratory and injunctive relief and damages against the arbitrary and capricious practices of Defendant OASIS, in violation of its contract with Plaintiff AIDS Healthcare Foundation ("AHF") and contrary to state and federal law.

2. AHF provides HIV/AIDS outpatient medical care and medical case-management services in the Pensacola area under the federal Ryan White HIV/AIDS grant program (42 U.S.C § 300ff *et seq.*) administered by OASIS through a contract with the Florida Department of Health. After renewing its longstanding agreement with AHF in March 2023, OASIS immediately declared that AHF was in breach of the new (and arbitrary and improper) terms of this contract and notified AHF of its intent to terminate this freshly minted contract by June 1. Upon information and belief, OASIS engaged in this ruse – executing a contract with AHF only to

1

terminate it, on a pretextual basis, weeks later – to manufacturer an excuse to avoid state and federal procurement law and award the contract, on a no-bid basis, to another service provider.

3.      OASIS has acted beyond the scope of its authority as the principal contracting entity with the Florida Department of Health to administer the Ryan White grant program in Northwest Florida.  Under the terms of its contract with the State, OASIS is required to contract with subcontractors such as AHF on terms consistent with those contained in OASIS's agreement with the State, and any such terms must be approved by the Department of Health.  OASIS's attempt to introduce additional, arbitrary terms to its subcontracting agreement with AHF, and to rely on these new, arbitrary provisions as grounds for terminating the contract immediately after entering into it, is *ultra vires* and void as a matter of law.

4.      OASIS's conduct has also disrupted the continuity of care for AHF's patients.  In recent days, OASIS has contacted several AHF clients and instructed them to seek medical treatment elsewhere – specifically from another provider favored by OASIS.  Thus, OASIS has actively interfered with and impeded AHF's care for its clients even before AHF's contract ostensibly terminates.

5.      For these reasons, AHF brings this action for injunctive relief, declaratory relief and damages arising from OASIS's unlawful and inequitable misconduct.

## Jurisdictional Allegations

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1332.

7.      The amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.

8.      AHF is a nonprofit corporation and a citizen of Los Angeles, California.

9.      OASIS is a nonprofit corporation and a citizen of Pensacola, Florida.

10. The Florida Department of Health is a department of the State of Florida existing under the laws of the State of Florida, with its principal offices located at 4052 Bald Cypress Way, Tallahassee, Florida.

11. This Court has personal jurisdiction over the Defendants, as they are located in this District, and the violations alleged herein occurred in this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District, or a substantial part of the property that is the subject of the action is situated in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants reside in this District.

**Factual Allegations**

13. AHF is a nonprofit corporation of international scope, providing HIV/AIDS medical treatment, counseling and preventive programs to more than 1.7 million people in 45 countries.

14. As part of this mission, AHF provides outpatient medical care and medical case-management services to tens of thousands of low-income clients around the United States through programs funded through the federal Ryan White HIV/AIDS Program. The Ryan White Program provides grant funds for HIV/AIDS programs for low income, uninsured and underinsured people living with or at risk of contracting HIV/AIDS. In Florida, the federal government provides funding for those services via a grant to the State through the Florida Department of Health.

15. In much of Florida, AHF and other Ryan White Program service providers contract directly with local health departments (arms of the Florida Department of Health) to provide Ryan White-covered services. An exception is Northwest Florida – the Department of Health's "Area

3

1" – where the Department of Health contracts with OASIS to administer the Ryan White Program. OASIS, in turn, enters into subcontracts with other service providers, including AHF, to provide services under the Ryan White Program.

16. OASIS's contract with the Department of Health requires that any subcontracts entered into by OASIS pursuant to that agreement "shall incorporate the terms of the Department's Standard Contract." *See* Exhibit A, attached. OASIS's contract with the Department of Health further states that "[a]ny modifications, amendments or termination of any subcontract agreements must be submitted to the [Department of Health] for review and approval prior to execution."

17. Among other provisions, OASIS's contract with the Department of Health requires that, when providing case management services, each full-time case manager must "maintain a minimum case load of 60 Eligible Clients." Ex. A.

18. For years, AHF has served the Pensacola area pursuant to a subcontractor agreement that incorporated these same terms and conditions. Under this contract, AHF has provided core medical services to some 1,400 low-income clients with HIV/AIDS. The medical portion of the contract includes physician primary care management, laboratory and radiology testing and specialty medical consulting services for clinic patients.

19. AHF also separately provides medical case management and support services to nearly 300 clients. Case Management is a care coordinating function that assesses client service needs, screens the clients for eligibility for Ryan White services, develops and individual care plan, coordinates access to care, monitors effectiveness of care plan, provides education and treatment adherence counseling, links clients to services and advocates for client where necessary. The case manager supports the client and the medical provider to facilitate the medical providers treatment

plan and the client's service plan.  The clients receiving case management services are but a subset of those clients receiving core medical services.

20. This agreement had been renewed on an annual basis for eight years before the contract was up for renewal again in April 2023.  AHF's prior agreement, titled Memorandum of Agreement for Outpatient Ambulatory Health Services and Ryan White Case Management Services, expressly stated that it may only be renewed "subject to the same terms and conditions set forth in the initial contract." *See* Exhibit B, § D(1).

21. When the time came to renew AHF's contract this year, however, OASIS sought to add new, additional terms to the renewed agreement – contrary to the renewal terms of the agreement itself.

22. The renewed agreement between AHF and OASIS, which took effect on April 1, 2023, included a new provision capping the caseload for case managers at 100 eligible clients.  *See* Exhibit C (the "Renewed Agreement").  Like the previous contract, this agreement contained an express provision stating that renewal "is subject to the same terms and conditions set forth in the initial contract." *Id.*

23. The Renewed Agreement also contains specific provisions identifying the "financial consequences" resulting from certain breaches of the agreement, including the case management terms.  Specifically, the contract states that "[f]ailure to maintain a case manager's caseload as specified will result in a $100.00 reduction in that month's invoice amount for each client a case manager maintains outside caseload guidelines." *Id.*, § D(1)(e).

24. The Renewed Agreement was signed by OASIS's executive director, Kurt Goodman, on March 25, 2023, and signed by AHF's president, Michael Weinstein, on April 13, 2023.

25. **Less than three weeks later,** OASIS sent a Notice of Termination to AHF. *See* Exhibit D. In the Notice, OASIS alleged that AHF was in violation of its new, arbitrary cap on case manager caseloads. *Id.* Notably, OASIS did not raise any issues related to AHF's outpatient medical care, or claim that AHF was in violation of any contract term concerning outpatient medical care. Nevertheless, OASIS stated that it was "exercising [its] authority" to terminate the agreement in its entirety – for case-management services *and* outpatient medical services – effective June 1, 2023. *Id.*

26. OASIS separately sent a termination notice to AHF via certified mail dated April 1, 2023 – the date the renewed agreement took effect, and before AHF had even executed the Renewed Agreement.

27. Significantly, OASIS did not provide AHF with an opportunity to cure these purported violations of the caseload cap before announcing its intent to terminate the Renewed Agreement. Nor did OASIS request a monetary penalty as contemplated by the Renewed Agreement – a less drastic measure that ensures continuity of services for clients.

28. AHF also disputed OASIS's conclusion that it was not in compliance with the Renewed Agreement. As of May 17, 2023, AHF's case management caseloads were within the arbitrary and improper limits imposed by OASIS. Moreover, AHF ultimately hired additional case managers at its own expense to ensure that it satisfied the arbitrary caseload cap imposed by OASIS. But OASIS has refused to acknowledge AHF's compliance, and it has continued to maintain that it intends to terminate the Renewed Agreement on June 1, 2023.

29. The circumstances demonstrate that OASIS's purported termination of the renewed agreement with AHF was pretextual, and that OASIS has breached its duties of good faith and fair dealing. OASIS attempted to terminate the renewed agreement only weeks after it was executed,

ostensibly based on a purported breach that, under the contract terms, is remedied by a mere $100 financial penalty. Moreover, OASIS has refused AHF an opportunity to cure and ignored evidence that any purported violation of the case manager caseload limit was remedied *before payment of the first invoice*. OASIS is also seeking to terminate the outpatient medical portion of the Renewed Agreement, though there is no claim that AHF has violated any medical care term of the Agreement.

30. OASIS's decision to terminate the entirety of the Renewed Agreement – terminating not only AHF's case-management services but also its outpatient medical care program – will seriously disrupt the continuity of care for the hundreds of low income patients – patients that the Ryan White Program is intended to assist and protect – and the therapeutic relationships that foster adherence to medications and the medical plan of care. Forcing these vulnerable patients to terminate years-long relationships and seek out new medical providers puts the patients' well-being and health outcomes at great risk.

31. Upon information and belief, OASIS engaged in this subterfuge to manufacture a "breach" of the agreement and create an opportunity to steer the contract to another, favored vendor – and avoid state and federal procurement rules governing the Ryan White Program.

32. In recent days, OASIS has contacted several AHF clients and instructed them to seek medical treatment elsewhere – specifically from another provider favored by OASIS. OASIS has interfered with AHF's relationships with these clients even while the Renewed Agreement remains in effect.

33. All conditions precedent to bringing these claims have occurred, been satisfied or otherwise have been waived or excused.

34. AHF has been forced to retain undersigned counsel to bring this action, and has incurred attorneys' fees and costs.

### Count I – Breach of Contract
### (Against OASIS)

35. AHF incorporates the allegations from paragraph 1 to 34 as if set forth in full herein.

36. AHF and OASIS entered into a renewed Memorandum of Agreement for Outpatient Ambulatory Health Services and Ryan White Case Management Services (the "Renewed Agreement").

37. AHF, at all times during which the Renewed Agreement was in effect, fully performed under the terms of the Renewed Agreement.

38. Despite AHF's compliance with the terms of the Renewed Agreement, OASIS breached its terms by, *inter alia*, (1) introducing new and arbitrary terms to the Agreement that differ from the terms and conditions set forth in the initial contract; and (2) arbitrarily and capriciously terminating its contract with AHF based on these new and arbitrary terms, in violation of the Renewed Agreement's clear and explicit terms.

39. OASIS's breach of the Renewed Agreement is substantial and material.

40. As a direct and proximate cause of OASIS's substantial and material breach, AHF has suffered substantial damage, including but not limited to the deprivation of its right to receive the benefits of the Renewed Agreement that it entered into with OASIS.

WHEREFORE, Plaintiff, AIDS Healthcare Foundation, demands temporary and permanent injunctive relief and judgment in its favor against Defendant, OASIS, for an award of any and all damages allowable by law including, but not limited to, all pre-judgment and post-judgment interest, attorneys' fees and costs, and any other remedy that the Court deems just and appropriate.

**Count II – Breach of Implied Covenant of Good Faith and Fair Dealing**
**(Against OASIS)**

41. AHF incorporates the allegations from paragraph 1 to 34 as if set forth in full herein.

42. AHF and OASIS entered into the Renewed Agreement, a valid, binding, and enforceable contract.

43. The Renewed Agreement incorporated, as all contracts in Florida do, an implied covenant of good faith and fair dealing.

44. OASIS's actions—including, but not limited to, its arbitrary and capricious misapplication of the express terms of the Renewed Agreement in contravention of the reasonable contractual expectations of AHF, and its attempt to terminate the Renewed Agreement immediately after entering into it, for purposes of establishing a pretextual and erroneous basis for terminating the contract—constitute a breach of the implied covenant of good faith and fair dealing.

45. OASIS's breach of the implied covenant of good faith and fair dealing is substantial and material.

46. As a direct and proximate cause of OASIS's substantial and material breach, AHF has suffered substantial damage, including but not limited to the deprivation of its right to receive the benefits of the Renewed Agreement that it entered into with OASIS.

WHEREFORE, Plaintiff, AIDS Healthcare Foundation, demands temporary and permanent injunctive relief and judgment in its favor against Defendant, OASIS, for an award of any and all damages allowable by law including, but not limited to, all pre-judgment and post-judgment interest, attorneys' fees and costs, and any other remedy that the Court deems just and appropriate.

**COUNT III – Tortious Interference with Business Relationships**
**(Against OASIS)**

47. AHF incorporates the allegations from paragraph 1 to 34 as if set forth in full herein.

48. AHF has an ongoing and beneficial relationship with the clients who receive outpatient medical care and medical case-management services from AHF under the Ryan White Program, under which AHF has legal rights.

49. OASIS has knowledge of AHF's ongoing and beneficial relationship with its Ryan White Program clients.

50. OASIS has interfered with AHF's ongoing and beneficial relationship with its Ryan White Program clients intentionally and without justification by contacting these clients and instructing them to seek medical treatment elsewhere – specifically from another provider favored by OASIS.

51. In interfering with AHF's ongoing and beneficial relationship with its Ryan White Program clients, OASIS acted in bad faith and with a conspiratorial motive – specifically to steer business to a favored vendor and evade state and federal procurement laws.

52. OASIS had actual knowledge of the wrongfulness of its conduct and of the high probability that damage or injury to AHF and its clients would result, and despite this knowledge OASIS intentionally pursued this course of conduct and injured AHF and its clients.

53. OASIS's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the medical care of AHF's clients or the rights of AHF.

54. As a direct and proximate result of OASIS's intentional and unjustified interference with AHF's relationships with its clients, AHF has suffered substantial damages.

WHEREFORE, Plaintiff, AIDS Healthcare Foundation, demands temporary and permanent injunctive relief and judgment in its favor against Defendant, OASIS, for an award of

any and all damages allowable by law including, but not limited to, all pre-judgment and post-judgment interest, attorneys' fees and costs, punitive damages, and any other remedy that the Court deems just and appropriate.

### Count IV – Declaratory Judgment and Injunction
### (Pursuant to 28 U.S.C. § 2201, *et seq.*, Fed. R. Civ. P. 57 and
### 28 U.S.C. § 2202 and Fed. R. Civ. P. 65)
### (Against OASIS and Florida Department of Health)

55. AHF incorporates the allegations from paragraph 1 to 34 as if set forth in full herein.

56. Oasis's authority as "Lead Agency" for administration of the Ryan White Program in Area 1 (Northwest Florida) for the Florida Department of Health is prescribed by its contractual agreement with the Florida Department of Health.

57. OASIS's contract with the Department of Health requires that any subcontracts entered into by OASIS pursuant to that agreement "shall incorporate the terms of the Department's Standard Contract." *See* Ex. A.  OASIS's contract with the Department of Health further states that "[a]ny modifications, amendments or termination of any subcontract agreements must be submitted to the [Department of Health] for review and approval prior to execution."

58. OASIS's contract with the Department of Health requires that, when providing case management services, each full-time case manager must "maintain a minimum case load of 60 Eligible Clients." Ex. A.  But this contract does not contain any maximum case load, or instruct OASIS or its subcontractors to limit the caseload for case managers to 100 eligible clients.

59. In addition, by its terms OASIS's agreement with AHF requires that any renewal of the agreement must be "subject to the same terms and conditions set forth in the initial contract." The caseload cap introduced by OASIS in the Renewed Agreement was not a term or condition of the initial contract.

11

60. Nevertheless, irrespective of these contractual provisions, OASIS introduced a new, arbitrary caseload limit for case managers in its Renewed Agreement with AHF, and then used this new and arbitrary contractual provision as a pretext to terminate the Renewed Agreement.

61. In addition, the caseload cap introduced by OASIS is unlawfully arbitrary. Indeed, the State of Florida's 2020-2021 HIV/AIDS Patient Care Program Administrative Guidelines not only do not require or impose a cap, they expressly prohibit such a restriction:

> If the lead agency elects to subcontract for services under their contract, the following guidelines must be adhered to:
> • All subcontracts must contain language and restrictions like the primary contract, including scope of work, which contains key activities/services to be rendered, and documentation required to substantiate the delivery of services.
> • All subcontracts must model the Ryan White Part B or GR lead agency contract.

62. As OASIS is seeking to impose a requirement on AHF that limits services without any authority or justification, and does not model OASIS's contract with the Department of Health, its decision is arbitrary and capricious and violates Florida law and Federal law, including but not limited to 45 C.F.R. § 75.328(a)(1) (prohibiting "placing unreasonable requirements on firms in order for them to qualify to do business") and § 75.328(a)(7) (prohibiting "[a]ny arbitrary action in the procurement process").

63. As a direct result of the arbitrary terms of the Renewed Agreement, AHF (and its clients) face irreparable injury and will continue in the future to suffer irreparable injury, in that they have and will be deprived of their rights under the Renewed Agreement, and their patients are currently and will continue to have the continuity of their care disrupted or erased as a result of OASIS's inequitable conduct.

64. To prevent further irreparable injury to AHF and its clients, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57,

declaring that (1) OASIS has no authority under its agreement with the Florida Department of Health or under Florida law to impose the case management caps included in the Renewed Agreement with AHF; (2) the case management cap included in the Renewed Agreement is contrary to the express language of the Agreement requiring renewal on the same terms and conditions set forth in the initial contract; (3) OASIS's attempt to terminate the Renewed Agreement with AHF based on the case management caps is *ultra vires* and therefore void and unenforceable; and (4) OASIS's attempt to terminate the contract based on the arbitrary and capricious case management caps is in violation of 45 C.F.R. § 75.328(a)(1) and § 75.328(a)(7).

65. The considerations involved in this claim favor the relief requested, for which AHF has a substantial likelihood of prevailing.

66. The interests of the State of Florida and its citizens are furthered by the relief requested that protects the interests of the Florida Department of Health and the integrity of the Ryan White Program.

67. The public interest is not disserved by the requested relief.

68. Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that this Court issue a preliminary and permanent injunction enjoining OASIS from enforcing the arbitrary caseload caps contained in the Renewed Agreement and from terminating the Renewed Agreement.

WHEREFORE, Plaintiff pray for judgment against Defendants and that the Court:

A. Declare the caseload limitations included in the Renewed Agreement between AHF and OASIS to be in violation of OASIS's contract with the Florida Department of Health and beyond the authority of OASIS;

B. Declare the caseload limitations included in the Renewed Agreement between AHF and OASIS to be contrary to the express language of the Agreement requiring renewal on the same terms and conditions set forth in the initial contract;

C. Declare that OASIS's attempt to terminate the Renewed Agreement with AHF based on the case management caps is *ultra vires* and therefore void and unenforceable;

D. Declare that OASIS's attempt to terminate the contract based on the arbitrary and capricious case management caps is in violation of 45 C.F.R. § 75.328(a)(1) and § 75.328(a)(7);

E. Preliminarily and permanently enjoin OASIS from enforcing the arbitrary caseload caps contained in the Renewed Agreement and from terminating the Renewed Agreement;

F. Enter a judgment against OASIS for compensatory damages in an amount to be determined at trial;

G. Award Plaintiff its costs and expenses incurred in bringing this action, including its reasonable attorneys' fees; and

H. Grant such other and further relief as the Court deems equitable, just and proper.

### Jury Demand

AHF demands trial by jury for all issues so triable.


Dated: May 31, 2023.

Respectfully submitted,

By: */s/ Kendall Coffey*
Kendall B. Coffey, Esq.
Florida Bar No. 259861
kcoffey@coffeyburlington.com
lperez@coffeyburlington.com
service@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, Penthouse One
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

*Counsel for Plaintiff AIDS Healthcare Foundation, Inc.*