UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

CASE NO: 4:23-cv-00230-MW-MAF

**AIDS HEALTHCARE FOUNDATION, INC.**,

    *Plaintiff*,

vs.

**OKALOOSA AIDS SUPPORT AND INFORMATIONAL SERVICES, INC.**, a/k/a "**OASIS**," and the **FLORIDA DEPARTMENT OF HEALTH**,

    *Defendants*.

## PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

    Plaintiff, AIDS Healthcare Foundation, Inc. ("<u>AHF</u>"), pursuant to the Court's Scheduling Order (DE 19) hereby files its Reply memorandum in support of its Emergency Motion for Preliminary Injunction (DE 8) as set for hearing on July 13, 2023. On the record following that hearing, the Plaintiff will ask for preliminary injunctive relief in its favor, as the merits and the balance of equities as well as the public interest tilt strongly in Plaintiff's favor.

### INTRODUCTION

    AHF, the world's largest private provider of HIV/AIDS treatment, which has been active for more than 30 years throughout the country, was terminated from the federal Ryan White HIV/AIDS grant program in Northwest Florida by Defendant OASIS, a local nonprofit headquartered in Fort Walton Beach, based on an arbitrary, *ad hoc* caseload requirement unlike any other in Florida, which was wholly invented by OASIS and imposed illegally and *ultra vires*.

Furthermore, OASIS acted without the affirmative approval of the Florida Department of Health (the "DOH"), which was expressly required.

Plaintiff is not rowing against the tide of the contract's provision regarding termination at will, which OASIS did not invoke, and which as a matter of law does not provide cover for OASIS to terminate the contract in bad faith, as the Complaint alleges. Rather, Plaintiff is simply arguing that this particular termination, which was fatally infected by OASIS's wrongful and unlawfully imposed cap on case managers, and which was not approved by the DOH, was illegal and beyond OASIS's legal authority, and should be declared as such by the Court. The plain language of the contract is in Plaintiff's favor, and therefore, so is the probability of success. Further the balance of hardships and the public interest—primarily, the power of choice by the HIV patients who are most acutely interested in this dispute, and for whom the Ryan White program is primarily intended to benefit—favors the Plaintiff's requested relief as well. Plaintiff will briefly address the relevant factors for temporary injunctive relief, which are well-known to all parties and the Court.

## **LIKELIHOOD OF SUCCESS**

Plaintiff recognizes the holding of *McKinney v. Portico LLC,* 2023 WL 2889737 (N.D. Fla. 2023), supporting the proposition that a contract provision allowing for termination for convenience is generally enforceable and allows terminations without cause. However, the law is equally clear that a party to a federal government services contract, such as the contract at issue here, cannot rely on a termination for convenience provision in bad faith. *See, e.g., TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 345 (2013) (recognizing a cause of action for breach of contract where federal contract is terminated in bad faith pursuant to termination-for-convenience provision); *Harris Corp. v. Giesting & Assocs., Inc.*, 297 F.3d 1270, 1272-73 (11th Cir. 2002)

("[t]ermination for convenience clauses may not be used to shield the terminating party from liability for bad faith or fraud").

In any case, the facts here are different than those in *McKinney*. First, as OASIS's own Response fully proves, the termination in this case stands or falls on OASIS's insertion into the 2023 contract language which was not included in its "model" contract with the Florida DOH, to the effect that there was not only a 60 patient minimum requirement for case managers but also a 100 patient maximum requirement. This is plainly contrary to OASIS's contract with DOH, which expressly requires OASIS to contract with subcontractors such as AHF on the same material terms as the pass-through provisions contained in the State's contract with OASIS, and any such terms must be approved by the DOH. *See* Declaration of Dawn Averill ("Averill Declaration"), attached hereto as Exhibit 1, at ¶¶ 20-22. *See also* DE 8-1 at 51. This is the same contract (between the Florida DOH and OASIS) which defines the "deliverables" under either the standard contract and the subcontract as including only a minimum number of patients required for case management services, and no maximum. DE 8-1 at 60-61.

In addition, OASIS's own contract (DE 8-1 at 17, paragraph 15(a)) requires that a termination of a subcontractor by OASIS be affirmatively approved by the DOH prior to the action being taken: "[A]ny modifications, amendments or termination of any subcontractor agreements must be submitted to the contract manager for review and approval prior to execution." Evidence at the hearing will be that this did not occur, and indeed, that the DOH was opposed to and tried to undo the termination when it found out about it, after the fact. Just as if a contract were terminated without the required opportunity to cure an alleged breach, *Magnum Construction Mgmt. Corp. v City of Miami Beach,* 209 So. 3d 51, 55 (Fla. 3d DCA 2016), a termination with a missing condition precedent (here, the State's approval) is fatally flawed and must be held as such

by the Court. Also, on the facts, the result if the DOH had been brought into the termination process would have been that a reasonable accommodation would have been worked out to protect the primary interest at stake—those of the patients.

In its Response, OASIS contends that it previously introduced the case-management cap in 2020 – though this factual allegation is very much in dispute. *See* Averill Declaration at ¶¶ 37-38. But the timing of this *ad hoc* requirement does not preclude a finding that it is arbitrary and capricious: Significantly, AHF has not encountered a case-management cap in any other Ryan White Part B program contract in Florida. Averill Declaration at ¶ 39. Moreover, the agreement itself provides only for financial penalties in the event of a violation of the case-management cap; neither the current agreement or the 2020 agreement contemplated the case-management cap as a basis for termination of the contract.

Moreover, while OASIS insists that it had the authority to adopt "guidelines" for subcontractors, it does *not* assert or show that the DOH approved of the case-management cap contained in its agreement with AHF, as expressly required under OASIS's agreement with the DOH. In the absence of such approval by DOH – even if consistent with federal requirements – OASIS exceeded its authority, and OASIS could not rely on these unapproved contract terms as a basis to terminate its agreement with AHF – making the termination void and unenforceable. *See, e.g., Title & Trust Co. of Fla. v. Parker*, 468 So. 2d 520, 524 (Fla. 1st DCA 1985) ("where the contract contains clause that is illegal, a court ought not to enforce the illegal term, as a contract cannot give validity to an otherwise illegal act"); *Accela, Inc. v. Sarasota County*, 993 So. 2d 1035, 1038-39 (Fla. 2d DCA 2008) ("a public entity must follow its own laws for a contract with the entity to be valid"); *Robert G. Lassiter & Co. v. Taylor*, 128 So. 14, 17 (Fla. 1930) (municipal

contract that violated city charter was "illegal and void"). Accordingly, AHF is likely to succeed on its breach of contract claim.

Moreover, OASIS's abrupt attempt to terminate the Renewed Agreement on such flimsy grounds, mere weeks after entering into it, is itself persuasive evidence demonstrating OASIS's breach of the duty and good faith and fair dealing: The evidence strongly suggests that OASIS had no intention of honoring the Renewed Agreement. However, with the implied covenant of good faith and fair dealing, "one party cannot capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001). That is exactly what OASIS has done here. And while OASIS relies heavily on the termination-at-will provision of the contract (*see* DE 23 at 19-21), this contract term does not allow OASIS to escape the consequences of its bad faith conduct. *See TigerSwan*, 110 Fed. Cl. at 345 (recognizing a cause of action for breach of contract where federal contract is terminated in bad faith pursuant to termination-for-convenience provision); *Harris Corp.*, 297 F.3d at 1272-73 ("[t]ermination for convenience clauses may not be used to shield the terminating party from liability for bad faith or fraud").

Finally, AHF is likely to succeed on its claim for declaratory relief. As discussed above, the case-management cap is plainly inconsistent with the other terms of the contract, and contrary to the terms of OASIS's contract with DOH. And there is no evidence that the case-management cap term was approved by DOH, as required. Thus, AHF is likely to succeed on its claim for a declaration that the imposition of these terms was *ultra vires* and beyond OASIS's authority.

AHF is also likely to succeed on its claim for a declaration that OASIS's conduct has violated the applicable federal regulations, which govern this and all grants under the Ryan White

programs, as the parties' contract acknowledges.  *See* Exhibit A to Averill Declaration at Attachment 1, ¶¶ A.2.bb, A.2.ff & H.1.

Under 45 C.F.R. § 75.300(b), the DOH (and by extension OASIS) are "responsible for complying with all requirements of the Federal award."  *See also* 45 C.F.R. § 75.303(b) (grant recipients must "[c]omply with Federal statutes, regulations and the terms and conditions of the Federal awards"). In addition, "subrecipients of a state," such as OASIS, are required to comply with the procurement standards contained in 45 C.F.R. §§ 75.327-335.  *See* 45 C.F.R. § 75.326.  This includes 45 C.F.R. § 75.328(a)(1), which prohibits subrecipients from "placing unreasonable requirements on firms in order for them to qualify to do business," and § 75.328(a)(7), which prohibits "[a]ny arbitrary action in the procurement process."  OASIS has run afoul of these regulations by instituting arbitrary case-management caps that are not required by the Ryan White program, or by the State of Florida in any other Part B program.

Moreover, 45 C.F.R. § 75.328(a) specifically states that "contractors that develop or draft specifications, requirements, statements of work, or invitations for bids or requests for proposals must be excluded from competing for such procurements."  45 C.F.R. § 75.328(a).  Yet that is exactly what OASIS has done here: It has created requirements for subcontractors such as AHF capping case-management services while at the same time competing with AHF for those case management services – as evidenced by the declaration of OASIS's executive director, Kurt Goodman.  *See* DE 23-7 at ¶ 4 ("As Lead Agency, OASIS both subcontracts with other providers to provide medical care and case management services to eligible clients under the Ryan White Part B program, **and also provides case management services directly to eligible clients**") (emphasis added).  Based on OASIS's own evidence, AHF is likely to succeed on its claim for a declaratory judgment that OASIS has violated 45 C.F.R. § 75.328(a).

The evidence will ultimately show that AHF is likely to succeed on its claims and is entitled to preliminary injunctive relief.

## BALANCE OF HARDSHIPS

The equities also favor injunctive relief. OASIS's actions have significantly disrupted AHF's relationships with its patients and threatened their continuity of care – interests that should be preserved through injunctive relief. Averill Declaration at ¶¶ 29-34. *See also, e.g., Mental Health Network, Inc. v. Marstiller*, 2022 WL 19330976, at *4 (S.D. Fla. Jan. 14, 2022) (effect on medical provider's ability to render services outweighs State's interest). As discussed in Ms. Averill's declaration, OASIS has attempted to steer not only case-management clients to itself and CAN, but also clients receiving medical services. Averill Declaration at ¶¶ 31-32. The effect on the continuity of care for AHF's clients is potentially catastrophic. *Id.* at ¶ 34. Meanwhile, OASIS at best has a claim to success in its bureaucratic power play, based on a grievance valued at $100 per violation in the contract.

## THE PUBLIC INTEREST

The public interest favors interim relief in favor of Plaintiff AHF. To date, AHF, even with its ability to be paid at risk, has continued to handle case management and medical services for HIV patients. Meanwhile, the DOH has received several complaints from patients whom OASIS has attempted to steer to other providers for either case management or other services. There is a reason why Area 1 patients have made AHF their one-spot-shop for medical and other HIV related services.

WHEREFORE, Plaintiff, AIDS Healthcare Foundation, Inc., respectfully requests that the Court enter an order enjoining Defendant, Okaloosa AIDS Support and Informational Services,

Inc., and rescinding OASIS's legally defective termination of June 1, 2023, and granting any additional relief as the Court deems just and appropriate.

        Respectfully submitted,

        **COFFEY BURLINGTON, P.L.**
        2601 South Bayshore Drive, Penthouse One
        Miami, Florida  33133
        Telephone: (305) 858-2900
        Facsimile:  (305) 858-5261

        By:  */s/ Scott A. Hiaasen*
            Kendall B. Coffey, Esq.
            Florida Bar No. 259861
            Scott A. Hiaasen, Esq.
            Florida Bar No. 103318
            kcoffey@coffeyburlington.com
            shiaasen@coffeyburlington.com
            lperez@coffeyburlington.com
            service@coffeyburlington.com
        *Counsel for Plaintiff AIDS Healthcare Foundation, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 10, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by CM/ECF and served on all counsel of record and all others registered to receive electronic service of court documents in this case via transmission of the Notice of Electronic Filing generated by CM/ECF.

/s/ *Scott A. Hiaasen*
Scott A. Hiaasen

| SERVICE LIST<br>*AIDS Healthcare Foundation, Inc. v. OASIS, et al.*<br>Case No. 4:23-cv-00230-MW/MAF ||
|---|---|
| **Douglas Alan Bates, Esq.**<br>**Daniel E. Harrell, Esq.**<br>dbates@clarkpartington.com<br>dharrell@clarkpartington.com<br>ahallecy@clarkpartington.com<br>jknudsen@clarkpartington.com<br>ldunlap@clarkpartington.com<br>jdallman@cphlaw.com<br>pmimperial@clarkpartington.com<br>**CLARK PARTINGTON**<br>P.O. Box 13010<br>Pensacola, Florida 32591-3010<br>Telephone: (850) 434-9200<br>Facsimile:  (850) 432-7340<br><br>**Bailey Howard, Esq.**<br>bhoward@clarkpartington.com<br>**CLARK PARTINGTON**<br>215 S. Monroe Street, Suite 530<br>Tallahassee, Florida 32301<br>Telephone: (850) 320-6831<br>Facsimile:  (850) 597-7591<br><br>*Counsel for Defendant Okaloosa AIDS Support and Informational Services, Inc. a/k/a "OASIS"* | **Katelyn R. Boswell, Esq.**<br>**Alyssa T. Silva, Esq.**<br>katelyn.boswell@flhealth.gov<br>alyssa.silva@flhealth.gov<br>Chief Legal Counsel<br>Office of the General Counsel<br>**FLORIDA DEPARTMENT OF HEALTH**<br>4052 Bald Cypress Way, Bin A-02<br>Tallahassee, Florida 32399-1708<br>Telephone: (850) 245-4005<br>Facsimile:  (850) 245-4790<br><br>*Counsel for Defendant Florida Department of Health* |