# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**AIDS HEALTHCARE**
**FOUNDATION, INC.,**

    *Plaintiff*,

v.                                        Case No.: 4:23cv230-MW/MAF

**OKALOOSA AIDS SUPPORT**
**AND INFORMATIONAL SERVICES,**
**INC., a/k/a "OASIS,"**

    *Defendant*.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

This is a diversity case surrounding the termination of an agreement to provide HIV/AIDS-related services to individuals in northwest Florida. The remaining defendant, Okaloosa AIDS Support and Informational Services, Inc. ("Defendant"), has moved to dismiss for failure to state a claim. ECF No. 20. This Court has considered, without hearing, Defendant's motion, ECF No. 20, and Plaintiff's response, ECF No. 26. By separate order, this Court denied Plaintiff's motion for preliminary injunction. ECF No. 46. This Order incorporates much of this Court's legal reasoning in that order. As it must, however, this Court relies on Plaintiff's factual allegations in the complaint, ECF No. 1, and not on this Court's factual findings at the preliminary injunction stage.

For the reasons that follow, Defendant's motion is **GRANTED in part and DENIED in part**. Plaintiff has failed to state a breach of contract claim as to Defendant's termination of the 2023 Agreement, but it has stated a breach of contract claim as to Defendant's imposition of a caseload cap. Similarly, Plaintiff has failed to state a claim as to breach of the implied covenant of good faith and fair dealing with regard to Defendant's termination of the 2023 Agreement, but Plaintiff has stated such a claim with regard to Defendant's imposition of a caseload cap. Plaintiff has also stated a claim as to tortious interference with a business relationship. Plaintiff is not, however, entitled to declaratory or injunctive relief on any claim.

I

In deciding Defendants' motion to dismiss, this Court accepts Plaintiff's factual allegations as true and construes them in the light most favorable to Plaintiff. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). The Ryan White Program is a federal initiative that provides grants to states, including Florida, to fund healthcare services for low-income and underinsured individuals living with or at risk for HIV/AIDS. ECF No. 1 ¶ 14. In most areas of Florida, the Florida Department of Health (DOH), the state agency receiving the Ryan White funding from the federal government, disperses Ryan White funds directly to service providers. *Id.* ¶¶ 14–15. In what DOH has termed "Area 1" (an area comprising Northwest Florida), however, DOH has entered an agreement with Defendant—

2

known as the Lead Agency Agreement—to administer the Ryan White Program. *Id.* ¶ 15. Defendant, in other words, is the Lead Agency for Area 1. *See* ECF No. 1-2 at 2; ECF No. 1-4 at 2. Plaintiff attached the Lead Agency Agreement to its complaint. ECF No. 1-1.

For years, Defendant executed agreements with Plaintiff—a nonprofit that delivers HIV/AIDS services worldwide—for Plaintiff to provide direct services to Ryan White Program patients in Area 1. *Id.* ¶¶ 2, 13–14, 18–20. Plaintiff attached the agreements for 2022 and 2023 (the "2022 Agreement," ECF No. 1-2, and the "2023 Agreement," ECF No. 1-3, respectively) to its complaint.

Unlike the 2022 Agreement, the 2023 Agreement required Plaintiff to maintain a maximum caseload for Ryan White Program case managers at one hundred eligible clients per case manager (the "caseload cap"). ECF No. 1 ¶ 22; ECF No. 1-3 at 6. The 2023 Agreement stated that "[f]ailure to maintain a case manager's caseload as specified will result in a $100.00 reduction in that month's invoice amount for each client a case manager maintains outside caseload guidelines." ECF No. 1 ¶ 23; ECF No. 1-3 at 8. Defendant signed the 2023 Agreement on March 25, 2023, and Plaintiff signed it on April 13, 2023. ECF No. 1 ¶ 24.

Both the 2022 and 2023 Agreements include a termination for convenience clause providing that "[t]his agreement may be terminated by either party without

3

cause, with no less than thirty (30) calendar days' notice in writing to the other party." ECF No. 1-2 at 2; ECF No. 1-3 at 2.

On May 1, 2023, Defendant gave written notice of termination of the 2023 Agreement, with an effective date of June 1, 2023. ECF No. 1 ¶ 25; ECF No. 1-4 at 2.[1] In that notice, Defendant stated that Plaintiff had not complied with the caseload cap—a conclusion that Plaintiff disputes. ECF No. 1 ¶¶ 25, 28; ECF No. 1-4 at 2. Before the notice, Defendant had afforded Plaintiff no opportunity to "cure these purported violations of the caseload cap." ECF No. 1 ¶ 27. Defendant had also not requested the $100-per-patient penalty contemplated in the 2023 Agreement. *Id.* After the notice, moreover, Plaintiff reduced its caseload to under one hundred clients per case manager as of May 17, 2023, and Plaintiff also hired additional case managers to endure that it remained under the caseload. *Id.* ¶ 28. Even so, Defendant "refused to acknowledge [Plaintiff's] compliance" and moved forward with its termination. *Id.* In short, Defendant's actions were a "ruse" to "steer the contract to another, favored vendor . . . ." *Id.* ¶¶ 2, 31.

---

[1] Plaintiff also alleges that Defendant had sent it a "termination notice . . . via certified mail dated April 1, 2023—the date the [2023] [A]greement took effect, and before [Plaintiff] had even executed the [2023] [A]greement." ECF No. 1 ¶ 26. Because Plaintiff had not signed the 2023 Agreement, this alleged termination notice had no effect on the 2023 Agreement.

4

Finally, following its notice of termination, Defendant "contacted several [of Plaintiff's] clients and instructed them to seek medical treatment elsewhere— specifically from another provider favored by [Defendant]." *Id.* ¶ 4.

II

Before moving to the merits, this Court sets out the applicable standard. "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Hunt*, 814 F.3d at 1221 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Hunt*, 814 F.3d at 1221 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Hunt*, 814 F.3d at 1221 (quoting *Twombly*, 550 U.S. at 555).

III

Now to the merits. Plaintiff brings four counts—a claim for breach of contract (Count I), a claim for breach of the implied covenant of good faith and fair dealing (Count II), a claim for tortious interference with a business relationship (Count III), and a request for declaratory and injunctive relief (Count IV). ECF No. 1 at 8–14. This Court addresses each count in turn.

A

Count I is a breach of contract claim. Plaintiff alleges that Defendant breached the 2023 Agreement in two ways. First, Plaintiff alleges that Defendant's imposition and enforcement of the caseload cap in the 2023 Agreement was arbitrary and, as such, violated applicable law. *Id.* ¶ 38. Second, Plaintiff alleges that Defendant "arbitrarily and capriciously terminat[ed] its contract with [Plaintiff] based on these new and arbitrary [caseload cap] terms, in violation of the [2023] Agreement's clear and explicit terms." *Id.*

Defendant addresses only Plaintiff's second theory—the theory relating to Defendant's termination of the 2023 Agreement. ECF No. 20 at 5–10. As this Court explained in its order denying Plaintiff's motion for preliminary injunction, ECF No. 46 at 22–36, Plaintiff relies on a bad-faith exception to termination for convenience clauses. It alleges that Defendant terminated the 2023 Agreement in bad faith and abuse of its contracting discretion—specifically, as part of a "subterfuge to manufacture a 'breach' of the agreement and create an opportunity to steer the contract to another, favored vendor—and avoid state and federal procurement rules governing the Ryan White Program." ECF No. 1 ¶ 31. This Court takes those allegations to be true, as it must. The bad-faith exception Plaintiff advances, however, does not exist under Florida law, which applies here. Thus, insofar as Plaintiff relies on an exception that does not exist, Plaintiff's theory that Defendant

breached the 2023 Agreement by terminating it fails to state a breach of contract claim.

Defendant does not address, in contrast, Plaintiff's theory that Defendant breached the 2023 Agreement by imposing the caseload cap. This theory does state a claim for breach of contract. As discussed in this Court's order denying Plaintiff's motion for preliminary injunction, ECF No. 46 at 12–21, federal regulations apply to the 2023 Agreement. Among the applicable regulations are 45 C.F.R. subsections 75.328(a)(1) and (7), both of which Plaintiff cites in its complaint. ECF No. 1 ¶ 62. Those regulations prohibit "placing unreasonable requirements on firms in order to qualify to do business" and "any arbitrary action in the procurement process," respectively. In alleging that Defendant imposed this cap "to manufacture a 'breach' of the [2023] Agreement and create an opportunity to steer the contract to another, favored vendor[,]" Plaintiff has pleaded a violation of those federal regulations and, therefore, stated a claim as to breach of the 2023 Agreement.

Therefore, Defendant's motion to dismiss is **DENIED** as to Count I.

B

Now for Count II—Plaintiff's claim that Defendant breached the covenant of good faith and fair dealing. Plaintiff bases this claim on Defendant's

> actions—including, but not limited to, its arbitrary and capricious misapplication of the express terms of the [2023] Agreement in contravention of the reasonable contractual expectations of [Plaintiff], and its attempt to terminate the [2023] Agreement immediately after

7

> entering into it, for purposes of establishing a pretextual and erroneous basis for terminating the contract [. . . .]

ECF No. 1 ¶ 44. Although this statement is ambiguous, Plaintiff appears to allege, consistent with its breach of contract claim, that Defendant breached the covenant by, first, imposing the caseload cap and, second, terminating the 2023 Agreement.

Once again, Defendant addresses only Plaintiff's second theory. As this Court observed in its order denying Plaintiff's motion for preliminary injunction, ECF No. 46 at 41, "the duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Endurance Am. Specialty Ins. Co. v. Liberty Mut. Ins. Co.*, 34 F.4th 978, 988 (11th Cir. 2022) (quotation omitted) (cleaned up). As mentioned *supra*, Plaintiff's theory that Defendant breached the 2023 Agreement by terminating it fails to state a claim, because Florida law—which controls here—does not recognize the bad-faith exception to termination for convenience that Plaintiff advances. Thus, Plaintiff cannot rely on that alleged breach to support its good faith and fair dealing claim.

Plaintiff's first theory, in contrast, does state a claim for breach of the implied covenant of good faith and fair dealing. As mentioned *supra*, Plaintiff's breach of contract claim survives based on Plaintiff's allegation that Defendant imposed an arbitrary caseload cap that applicable federal regulations prohibited. Plaintiff may

permissibly allege, and has alleged, that Defendant's imposition of that cap also violated the covenant of good faith and fair dealing. Because Plaintiff states a claim for breach of the implied covenant of good faith and fair dealing, Defendant's motion to dismiss is **DENIED** as to Count II.

C

In Count III, Plaintiff claims that Defendant tortiously interfered with Plaintiff's business relationships with its clients. ECF No. 1 at 10–11. Defendant argues that Plaintiff has failed to allege an element of tortious interference. Defendant also argues that, because Defendant also has relationships with those same clients, its interference is privileged. ECF No. 20 at 14.

Regarding the sufficiency of Plaintiff's allegations, Defendant asserts that Plaintiff must allege "that Defendant employed some improper means in order to survive dismissal." ECF No. 20 at 14 (quoting *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1295 (S.D. Fla. 2018)). This argument fails. Based on the Eleventh Circuit's interpretation of Florida law, using improper means is a not standalone element of tortious interference with a business relationship. Nor does the case Defendant cites state otherwise.

Under Florida law, tortious interference with a business relationship has four elements—namely, "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified

9

interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015) (cleaned up) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). The formulation does not include improper means, and the case Defendant cites referred to no authority for that supposed element. Rather, that case's mention of improper means was, consistent with the Eleventh Circuit's interpretation of Florida law, a gloss on the third requirement—namely, "an intentional and unjustified interference with the relationship by the defendant."[2] *Sentry Data Sys., Inc.*, 361 F. Supp. 3d at 1295.

That gloss forms the basis for Defendant's second argument—namely, that Defendant's interference was privileged because Defendant was Lead Agency. "Under Florida law, a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference," if it "has any beneficial or economic interest in, or control over, that relationship." *Palm Bch. Cnty. Health Care Dist. v. Professional Medical Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009). This "privilege of interference" by a defendant does not apply, however, when the interfering defendant acts "out of malice alone, or solely for ulterior purposes" or

---

[2] Indeed, the case Defendant cites refers—immediately before its mention of "improper means"—to the same standard this Court uses. *Sentry Data Sys., Inc.*, 361 F. Supp. 3d at 1295 (citing *Duty Free Americas, Inc.*, 797 F.3d at 1279).

employs improper methods, such as "threats, intimidation and conspiratorial conduct," "the purposeful causing of a breach of contract," or misrepresentations. *See M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni*, 982 F.3d 1333, 1339–40 (11th Cir. 2020) (recognizing Florida court's holding that improper methods exception applied to contractor's otherwise privileged interference with relationship between subcontractor and subcontractor's employee) (citing *McCurdy v. Collis*, 508 So. 2d 380 (Fla. 1st DCA 1987)); *KMS Restaurant Corp. v. Wendy's Intern., Inc.*, 361 F.3d 1321, 1326–27 (11th Cir. 2004) (citations omitted) (collecting cases).

In response, Plaintiff does not contest that, because Defendant is Lead Agency, its interference could be privileged. Plaintiff argues, however, that the exception to privilege—which includes the "improper means" language to which Defendant refers, *see* ECF No. 20 at 15 (citing *Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013))—applies. Plaintiff alleges that Defendant instructed the Ryan White clients to seek treatment "from another provider favored by [Defendant]" and that "in interfering with [Plaintiff's] ongoing and beneficial relationship with its Ryan White Program clients, [Defendant] acted in bad faith and with a conspiratorial motive—specifically to steer business to a favored vendor . . . ." ECF No. 1 ¶¶ 50–51.

Without factual allegations to bolster them, Plaintiff's statements come close to being conclusory. Additionally, one could question whether alleging actions taken

11

"in bad faith and with a conspiratorial motive" satisfies the bar of acting "out of malice alone, or solely for ulterior purposes." Similarly, acting "with a conspiratorial motive" is not the same as engaging in "conspiratorial conduct," which requires an action taken in concert with another person or entity. *See Morsani v. Major League Baseball*, 663 So. 2d 653, 655–57 (Fla. 2d DCA 1995) (finding that plaintiffs had alleged conspiratorial conduct by stating that "various of the defendants had conspired together . . . to prevent the plaintiffs from consummating" purchases of a team).

While a close call, Plaintiff—by the skin of its teeth—has alleged an exception to Defendant's privileged interference. Therefore, both of Defendant's arguments as to Plaintiff's tortious interference claim fail. Defendant's motion to dismiss is **DENIED** as to Count III.

D

Finally, in Count IV, Plaintiff requests declaratory and injunctive relief based on its claims. With regard to declaratory relief, Plaintiff seeks a declaration

> that (1) [Defendant] has no authority under its agreement with [DOH] or under Florida law to impose the case management caps included in the [2023] Agreement with [Plaintiff]; (2) the case management cap included in the [2023] Agreement is contrary to the express language of the Agreement requiring renewal on the same terms and conditions set forth in the initial contract; (3) [Defendant's] attempt to terminate the [2023] Agreement with [Plaintiff] based on the case management caps is *ultra vires* and therefore void and unenforceable; and (4) [Defendant's] attempt to terminate the contract based on the arbitrary

12

and capricious case management caps is in violation of 45 C.F.R. § 75.328(a)(1) and § 75.328(a)(7).

ECF No. 1 ¶ 64. With regard to injunctive relief, Plaintiff requests that this Court enjoin Defendant "from enforcing the arbitrary caseload caps contained in the [2023 Agreement] and from terminating the [2023 Agreement]." *Id.* ¶ 68. Defendant argues that because it lawfully terminated the 2023 Agreement, declaring that Defendant breached the 2023 Agreement and enjoining Defendant from enforcing the caseload cap and terminating the 2023 Agreement would address an injury that no longer affects the parties. *See* ECF No. 20 at 17–19. Thus, Defendant contends, both requests address nonjusticiable issues. *See id.*

The Declaratory Judgment Act provides that "[i]n case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The standard for when an action for declaratory judgment presents a justiciable controversy is whether, under the facts alleged, "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995). An injury from past conduct, absent allegations "that such conduct will continue or be repeated in the future[,]" does not provide a justiciable

controversy supporting a declaratory judgment. *See Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985).

Likewise, injunctive relief is available to redress only continuing or future harm, not past harm. *See Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 916 (11th Cir. 2018) ("[C]laims for declaratory and injunctive relief . . . are inherently prospective in nature . . . . Since [the challenged ordinance] has been preempted by state law, [it] is incapable of sowing future harm, mooting the [plaintiffs'] claims for declaratory and injunctive relief.") (citations omitted); *31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003) (holding plaintiffs' claim moot: "because the plaintiffs' amended complaint seeks only prospective injunctive relief [but they] cannot be further harmed by the defendants' alleged illegal practices . . . , no live controversy exists."); *see also United States v. Or. State Med. Soc.*, 343 U.S. 326, 333 (1952) ("The sole function of an action for injunction is to forestall future violations. It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured.").

Here, for the reasons stated *supra*, Defendant terminated the 2023 Agreement. For that reason, what is left of Plaintiff's breach of contract claim is limited to a past alleged wrong. Plaintiff's claim, if meritorious, is limited to damages incurred

between Defendant's alleged breach and Defendant's termination.[3] Therefore, declaratory and injunctive relief—which can only be awarded to redress ongoing or future harm—is unavailable.

In its response to the motion to dismiss, Plaintiff argues that Defendant's alleged interference with Plaintiff's relationship with its Ryan White clients—specifically, "by contact[ing] them and instruct[ing] them to seek medical care from another provider—presents an irreparable, ongoing injury. *See* ECF No. 26 at 13–14. The complaint, however, requests no injunctive or declaratory relief as to that alleged interference. Plaintiff's tortious interference claim, thus, cannot save its request for declaratory and injunctive relief. Defendant's motion to dismiss is **GRANTED** as to Count IV.

IV

In sum, Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference survive. Plaintiff's request for

---

[3] This Court notes that Defendant's alleged breach of the 2023 Agreement by imposing the caseload caps did not, of itself, terminate the 2023 Agreement. *See Rector v. Larson's Marine, Inc.*, 479 So. 2d 783, 785 (Fla. 2d DCA 1985) ("In a case that involves a total breach of contract, . . . an injured party is entitled to an election of remedies. He may treat the contract as void and seek the damages that will restore him to the position he was in immediately prior to entering the contract. Alternatively, he may elect to affirm the contract, insist upon the benefit of his bargain, and seek the damages that would place him in the position he would have been in had the contract been completely performed.") (citation omitted); *see also Indian River Colony Club, Inc. v. Schopke Constr. & Eng'g, Inc.*, 592 So. 2d 1185, 1188–89 (Fla. 5th DCA 1992) (Griffin, J., concurring specially) ("When a contract is breached it does not terminate; it continues to exist . . . . What actually occurs is that the innocent party is entitled to treat his obligations under the existing contract as discharged and sue for damages occasioned by the breach.") (citing 11 S. Williston, *A Treatise on the Law of Contracts* §§ 1305–08 (3d ed. 1968)).

declaratory and injunctive relief, in contrast, is due to be dismissed because Defendant terminated the 2023 Agreement, cutting off the availability of ongoing or forward-looking relief.

Accordingly,

**IT IS ORDERED:**

1. Defendant's motion to dismiss, ECF No. 22, is **GRANTED in part and DENIED in part**.

2. Count IV of Plaintiff's complaint, ECF No. 1, is **DISMISSED**.

   **SO ORDERED on October 10, 2023.**

   <u>s/Mark E. Walker</u>
   **Chief United States District Judge**